**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
BRENDA MAXTON,

                        Plaintiff,                **MEMORANDUM OF**
                                          **DECISION AND ORDER**
                -against-                12-cv-1337 (ADS)(AKT)

UNDERWRITER LABORATORIES, INC.,

                        Defendant.
-------------------------------------------------------X
**APPEARANCES:**

**Leeds Brown Law, P.C.**
*Attorneys for the Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514
      By:  Brandon Okano, Esq., Of Counsel

**Winston & Strawn LLP**
*Attorneys for the Defendant*
35 West Wacker Drive
Chicago, IL 60601-1723
      By:  Michael P. Roche, Esq., Of Counsel


**SPATT, District Judge.**

On March 19, 2012, the Plaintiff Brenda Maxton (the "Plaintiff") commenced this action

against her former employer, Underwriter Laboratories, Inc. (the "Defendant"), alleging that the

Defendant harassed her, discriminated against her, and retaliated against her in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq* ("Title VII"), and in violation of

the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq* ("NYSHRL").  In

particular, the Plaintiff asserted that the Defendant acted against her based on her age, race,

religion, and in retaliation for her complaints of the discrimination.  Further, although it does not

appear that the Plaintiff asserted gender-based discrimination, a liberal reading of the complaint suggests a claim of hostile work environment on the basis of gender.

On June 26, 2012, the Plaintiff filed an amended complaint, withdrawing the state law causes of action.

Following discovery, on May 23, 2013, the Defendant moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment dismissing the complaint.

In opposition, the Plaintiff expressly withdrew any Title VII discrimination claims based on religion and gender. It also appears that the Plaintiff has abandoned her claims based on age and race. Thus, the pending claims are (1) hostile work environment on the basis of gender and (2) retaliation for complaining about the harrassment.

For the following reasons, the Defendant's motion is granted.

## I.    BACKGROUND

The following facts are drawn from the parties' respective Rule 56.1 statements and materials.

The Defendant is a consumer product safety organization that has been writing safety standards and testing products for over 100 years.

The Plaintiff, an African-American Jehovah's Witness, began working for the Defendant in 1997 as a clerical specialist. In 1998, the Plaintiff voluntarily resigned her employment, but returned later that year as a human resources assistant. In 2005, the Plaintiff was laid off. In 2006, the Defendant rehired the Plaintiff as a Project Handler II in the High Tech Department. Gary Johnson ("Johnson"), a section manager in the High Tech Department, made the decision to re-hire the Plaintiff.

From 2006 until October 2010, Johnson was the Plaintiff's supervisor.

From October 2010 until her termination in February 2011, the Plaintiff's direct supervisor was Norman Lowe, an Engineering Leader.  Lowe is African –American.  During the same period, Lowe reported to Jon Schuette, an Engineering Manager.

The Plaintiff's primary duty as a Project Handler II was to provide administrative support to the engineers in her section.

In the Defendant's employee handbook, which is distributed to all employees, the Defendant has an "Equal Employment Opportunity and Prohibition of Discrimination and Harassment" policy, which prohibits discrimination in the workplace on the basis of any protected characteristic.  The handbook also contains a complaint procedure, outlining various avenues for employees to report discrimination or harassment, including reporting the incident to any member of the management or the human resources department.  When an employee makes a complaint, the human resources department investigates and works to resolve the complaint.  Also, the Defendant distributes a Standards of Business Conduct manual to its employees that prohibits discrimination or harassment of employees; operates an ethics hotline that employees can call or email to make a complaint; and requires all employees to receive discrimination and harassment training annually.

The Plaintiff knew about the Defendant's procedures for employee complaints because she had been an employee of the human resources department for several years, during which time she worked with human resources policies on a daily basis.

In January 2009, the Plaintiff complained about the behavior of a co-worker, David Keen ("Keen"), to Johnson, her supervisor at the time.  In particular, the Plaintiff complained that Keen stared at her; walked close behind, "galloping" on one occasion; followed her around the High-Tech department; and stood behind her chair while he was talking to Lowe, with whom the

Plaintiff shared a cubicle. The Plaintiff also complained that when she told a clean-shaven Keen that a picture of him with a mustache was nice, Keen responded by asking the Plaintiff whether she liked him better with or without a mustache.

Johnson warned the Plaintiff that Keen would be angry that she had complained about him. However, Johnson told the Plaintiff that he would talk to Keen about his behavior, which Johnson did. Johnson instructed Keen to behave professionally.

In April 2009, the Plaintiff again complained about Keen's behavior, this time to Dorlena Dunbar, a Human Resources Manager. The Plaintiff complained to Dunbar that Keen had stood in the aisle outside of her cubicle, and he stared and laughed at her.

That month, Dunbar, with the assistance of another member of the Human Resources Department, conducted an investigation of Plaintiff's complaints about Keen. As part of this investigation, seven employees in the Plaintiff's department were questioned about Keen's behavior.

On May 8, 2009, the Plaintiff had a meeting with Keen, Dunbar, and Johnson to discuss a resolution to the Plaintiff's complaint. During that meeting, Keen agreed that, in the future, when he stopped by the Plaintiff's cubicle to speak with Lowe, he would sit in Lowe's visitor chair rather than stand behind the Plaintiff's chair. Keen apologized to the Plaintiff for his behavior. The Plaintiff agreed to this resolution and did not ask the Defendant to take any other measures at that time.

On May 22, 2009, Dunbar followed up with the Plaintiff and each month thereafter through September 2009 to ask the Plaintiff how things were going with Keen. Each time, the Plaintiff informed Dunbar that there were no issues with Keen's behavior.

In October 2009, the Plaintiff complained in writing to Dunbar that Keen had entered her cubicle and, rather than sit in Lowe's visitor chair as he had agreed to do, he stood behind the Plaintiff. Following this incident, the Plaintiff asked to have her work station moved to a different cubicle, and the Defendant promptly honored that request.

Separately, the Defendant issued a written warning to Keen concerning his behavior. The warning was placed in Keen's personnel file. The Plaintiff was satisfied with the Defendant's resolution of her complaint about Keen and, as a result of her seat change, the visits from Keen ceased.

After October 2009, Keen did not behave inappropriately toward the Plaintiff and she never reported another problem with him. Keen never (1) harassed the Plaintiff outside of work, (2) asked her on a date; (3) made any comments of a sexual nature to her; (4) touched her; or (5) made any comments about the Plaintiff's body or clothing. Further, the Plaintiff never heard that Keen made any comments about her to others.

The Plaintiff claims that, after she complained about Keen's behavior, her other co-workers ostracized her. Specifically, the Plaintiff noticed that some co-workers would approach her new seating location and give her "glaring looks." The parties dispute whether the Plaintiff complained about the alleged "glaring looks" before filing her charge of discrimination in May 2011.

Specifically, in the Plaintiff's deposition, she stated that two co-workers outside of the Plaintiff's section came by her new seating location; "seemed upset" that she was there; asked if the Plaintiff was still reporting to Johnson; and stated that they did not know that the Plaintiff was going to be sitting there. The Plaintiff alleges that she "complained" about this incident to

Dunbar while waiting in line in the Defendant's cafeteria, and that Dunbar told her to ignore those employees.

The Plaintiff also complained to Johnson and Dunbar that she believed her co-worker Lana Thomas left a kitchen knife, about the size of a Bic pen, on the Plaintiff's credenza for one week with the intention that Keen would become angry and use the knife to stab the Plaintiff. As to this belief, the Plaintiff testified that "[T]here was no cake. There were no muffins. No bread to be cut." (The Plf's Dep, at 82.)

The Plaintiff further asserts that her co-workers discriminated against her by withholding job assignments because they did not like the fact that she complained about Keen.

In August 2010, the Plaintiff overheard two co-workers, Eric Bull and Melvyn Grossman, state that Jehovah's Witnesses are "shady." However, the Plaintiff never complained to the human resources department about this remark. The Plaintiff insists that she sought to immediately report this incident, but at that time, the human resources department was closed.

Also, that month, the Plaintiff overheard another co-worker, Max Rodriguez, tell Bull to "suck [my] dick." The Plaintiff also overheard Bull tell another employee that the Plaintiff wore "control-top underwear." The Plaintiff never complained about these comments to the human resources department, and admits that these comments were not directed toward her.

Meanwhile, back in February 2010, the Plaintiff asked Johnson, her supervisor at the time about a promotion from Project Handler II to Project Handler I. Johnson informed the Plaintiff that before she would be promoted, she had to satisfy certain criteria. Johnson ultimately decided not to promote the Plaintiff to Project Handler I. Johnson noted that the employees who were then in the Project Handler I position performed more technical work than the Plaintiff had

performed, and Johnson felt that the Plaintiff lacked the technical skills to succeed in that position.

In April 2010, two other employees, neither of which reported to Johnson, were promoted from Project Handler II to Project Handler I. Johnson had no involvement in the decision to promote the other employees.

In late 2010, Lowe, the Plaintiff's supervisor at the time, approached her and asked her if she would like to move her seat back to be with the rest of her team, which the Plaintiff agreed to do. However, as moving workspace was not a priority at the time, this change did not occur.

In February 2011, in response to missed revenue targets for 2010, the Defendant implemented a ten percent reduction-in-force. As a result, approximately 200 of the Defendant's employees were laid off in the United States. In connection with this reduction-in-force, Schuette, instructed the Engineering Leaders who reported to him to identify the employees on their respective teams who, if their positions were eliminated, would have the least impact on each team.

Lowe was one of the Engineering Leaders who reported to Schuette at that time. Lowe had eight employees on his team, six of whom were engineers and two of whom, including the Plaintiff and an individual named Savannah Johnson-Jackson ("Johnson-Jackson"), provided administrative support. Lowe decided that the engineers were more critical to the functioning of his team and that he would eliminate one of the two employees who provided administrative support. Lowe states that he decided to retain Johnson-Jackson instead of the Plaintiff because Johnson-Jackson had more experience and technical abilities than the Plaintiff. Johnson-Jackson is also African-American. The Plaintiff was terminated on February 3, 2011.

The Plaintiff asserts that her termination was pretextual, and in retaliation for her internal complaints concerning Keen.

Schuette accepted Lowe's decision and the Plaintiff's position was eliminated. The Plaintiff has not been replaced, and no Project Handler II positions have been open or posted in the High Tech groups department since the reduction-in-force. Neither Lowe nor Schuette consulted with Johnson regarding the decision to eliminate the Plaintiff's position as part of the reduction-in-the workforce.

On April 28, 2011, the Defendant posted on its website an opening for a Project Handler II position in its Wire & Cable department. The opening was created when another Project Handler II in that department departed on long-term disability and was not expected to return to work. On August 15, 2011, the Defendant filled the Project Handler II position, but the individual hired resigned effective September 30, 2011. On October 7, 2011, the Defendant reposted the position, but ultimately decided to promote a Project Handler III to fill the open Project Handler II position.

On May 24, 2011, the Plaintiff filed a charge of discrimination with the New York State Division of Human Rights (the "Charge"). The Charge was forwarded to the Equal Employment Opportunity Commission for dual filing purposes. The status of the Charge is not clear.

On March 19, 2012, the Plaintiff commenced this action, alleging that the Defendant harassed her, discriminated against her, and retaliated against her in violation of Title VII and the NYSHRL. In particular, the Plaintiff asserted that the Defendant acted against her based on her age, race, and religion; and retaliated against her for complaining about Keen. As noted above, although it does not appear that the Plaintiff asserted gender-based discrimination, a liberal reading of the complaint suggests a claim of hostile work environment on the basis of gender.

On June 26, 2012, the Plaintiff filed an amended complaint, withdrawing the state law causes of action.

Following discovery, on May 23, 2013, the Defendant moved pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the complaint. In opposition, the Plaintiff withdrew her Title VII discrimination claims based on gender and religion. It also appears that the Plaintiff has abandoned her claims based on age and race. The pending claims are (1) hostile work environment on the basis of gender and (2) retaliation for complaining about Keen.

With respect to the Plaintiff's hostile work environment claim, the Defendant first contends that the complained-of conduct does not rise to the requisite level of "severe or pervasive" sex harassment so as to trigger liability under Title VII. Second, the Defendant asserts that the hostile work environment claim is time-barred, as Keen stopped "harassing" her more than 300 days before the Plaintiff filed the Charge. In this regard, the Defendant contends that the alleged incidents that occurred within the limitations period are not sufficiently related to Keen's prior conduct to constitute a continuing violation. Third, the Defendant contends that there is no basis to impute liability to it for the alleged conduct because (1) there is no evidence of supervisor misconduct and (2) the Defendant promptly investigated all the complaints. As to the Plaintiff's retaliation claim, the Defendant contends that the Plaintiff's termination was driven by a legitimate, non-discriminatory business reason, namely the reduction-in-force.

## II.      DISCUSSION

A.  The Summary Judgment Standard

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material

facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248, 106 S. Ct.

2505. An issue of fact is considered "genuine" when a reasonable finder of fact could render a

verdict in favor of the non-moving party. Id. In considering a summary judgment motion, "the

court's responsibility is not to resolve disputed issues of fact but to assess whether there are any

factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against

the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson,

477 U.S. at 248, 106 S. Ct. 2505). If the Court recognizes any material issues of fact, summary

judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New

York, 762 F.2d 243, 249 (2d Cir. 1985).

　　　If the moving party discharges its burden of proof under Rule 56(c), the non-moving

party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R.

Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary

judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at

256, 106 S. Ct. 2505. Indeed, "the mere existence of some alleged factual dispute between the

parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48.

Rather, enough evidence must favor the non-moving party's case so that a jury could return a

verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219,

1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because

the evidence to support its case is so slight, there is no genuine issue of material fact and a grant

of summary judgment is proper.").

B. The Hostile Work Environment Claim

To state an actionable claim under a hostile work environment theory, a plaintiff must establish that: (1) "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); see Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59, 63 (2d Cir. 1992).

Whether offensive conduct "is 'hostile' or 'abusive' depends on the totality of circumstances." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 767-68 (2d Cir. 1998), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Factors considered in deciding hostility include: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Quinn, 159 F.3d at 767-68 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). "Title VII does not establish a general civility code for the American workplace." Polo v. Xerox Corp., 10-CV-6288 (FPG), 2014 WL 317171, at *4 (W.D.N.Y. Jan. 28, 2014).

In this case, a review of the record indicates that the evidence of hostile work environment based on sex is as follows: Over a one to two year period, (1) Keen stared at the Plaintiff; (2) Keen invaded her space; (3) Keen followed her in the hallways; (4) Keen "gallop[ed]" behind her in "close proximity of [the Plaintiff's] backside" with his hands on his hips and his legs "straddling out"; (5) Keen laughed loudly while staring at her from outside her

workstation; (6) Bull commented to another individual that the Plaintiff wears "control-top underwear"; (7) Rodriguez told Bull to "suck his dick." According to the Plaintiff, she complained about these incidents on no less than three occasions.

However, the Court finds that the incidents involving Keen are not actionable as part of hostile work environment theory because they fall outside the statutory time period. Indeed, Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e–5(e)(1) (providing that where a complainant "has initially instituted proceedings with a State or local agency with authority to grant or seek relief," the complainant has 300 days from the occurrence of the "alleged unlawful employment practice" to file a complaint with the EEOC).

Here, the Plaintiff filed the Charge on May 24, 2011. Therefore, any conduct occurring before July 28, 2010 is untimely. It is undisputed that Keen's alleged harassment ended in October 2009, well outside the limitations period.

Nonetheless, the Plaintiff invokes the continuing violation exception to the Title VII limitations period, which provides that "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155–56 (2d Cir. 2012) (citations and internal quotation marks omitted); see also Jackson v. N.Y. Office of Mental Health, No. 11–CV–7832 (GBD)(KNF), 2012 WL 5862741, at *2 (S.D.N.Y. Nov. 15, 2012) ("The continuing violation exception makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a 'continuous policy and practice of

discrimination' and at least one act in that policy and practice took place within the limitations period.")(citation omitted).

Since "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" the entire time period of the alleged hostile environment "may be considered by a court for the purposes of determining liability" if "an act contributing to the claim occurs within the filing period." Nat'l R.R. Passenger Corp., 536 U.S. at 117, 122 S. Ct. 2061; see also McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010) (stating that, because hostile work environment claims occur "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own," the court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, . . . for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.")(quoting Morgan, 536 U.S. at 105, 122 S. Ct. 2061); Caravantes v. 53rd St. Partners, LLC, No. 09-CV-7821 (RPP), 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'. . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.")(quoting Morgan, 536 U.S. at 117, 122 S. Ct. 2061)).

Thus, in hostile work environment cases, where there is a continuing violation claim, "if any act falls within the statutory time period," the Court must "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice." McGullam, 609 F.3d at 76 (internal quotation marks omitted) (quoting Morgan, 536

U.S. at 120, 122 S. Ct. 2061); <u>see also</u> <u>Raneri v. McCarey</u>, 712 F. Supp. 2d 271, 281 (S.D.N.Y. 2010) ("To defeat the statute of limitations by applying the continuing violation theory, the evidence must show that such a hostile environment was created prior to, and continued into, the [statutory time period]."). The Second Circuit has held that, under <u>Morgan</u>, the Court is required "to make an individualized assessment of whether incidents and episodes are related." <u>McGullam</u>, 609 F.3d at 76. A "sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." <u>Id.</u> at 77.

In this case, the Court finds that the continuing violation doctrine is inapplicable. All of the untimely incidents of alleged harassment by Keen are wholly unrelated to the timely incidents, namely (1) Bull's comment about Jehovah's Witnesses; (2) Rodriguez comment to Bull to "suck [his] dick"; and (3) Bull's comment to someone else that the Plaintiff wore "control-top underwear." The Plaintiff's viable timely allegations consist of sporadic, discriminatory actions, taken by different co-workers. These types of differences "preclude invocation of the continuing violation doctrine." <u>Little v. Nat'l Broadcasting Co., Inc.</u>, 210 F. Supp. 2d 330, 368 (S.D.N.Y. 2002). A plaintiff may not "resurrect stale claims by stating that dissimilar acts are related," for to do so would transform the continuing violation doctrine into "a boundless exception to the statute of limitations." <u>Crosland v. City of New York</u>, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001); <u>see also</u> <u>Wang v. New York City Dep't of Finance</u>, No. 96-CV-5170, 1999 WL 529550, at *11 (E.D.N.Y. 1999) ("These alleged acts of discrimination do not amount to a continuing violation. They are neither similar nor clearly related to each other. The circumstances surrounding each, including the parties involved, vary significantly.").

However, "[e]ven if a jury were to find that there was no continuing violation, 'clearly established precedent dictates that [a] discriminatory act which is not made the basis for a timely charge can still be relevant background evidence in a Title VII proceeding.'" Ramirez v. New York Presbyterian Hosp., 129 F. Supp. 2d 676, 680 (S.D.N.Y. 2001)(additional internal quotation marks omitted); see also Berger v. Port Auth. of N.Y. and N.J., 150 F. Supp. 2d 504, 507 (E.D.N.Y. 2001) (Even where continuing violation exception did not apply to save the plaintiff's time-barred claims, the court would consider evidence of those claims on the theory that it was relevant background to the plaintiff's timely claim)(citing Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001)("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period.")). However, the Court emphasizes that time-barred incidents are only considered as background evidence, and not as independently actionable events.

The question now becomes whether the Plaintiff's timely allegations support a claim of hostile work environment based on gender. The Court finds that they do not. As noted above, a plaintiff alleging a hostile work environment must come forward with sufficient evidence to show "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or] her employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Only "harassment that transcends coarse, hostile and boorish

behavior can rise to the level of a constitutional tort." Davis v. Passman, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979).

Here, even construing the evidence in a light most favorable to the Plaintiff, the timely allegations – namely, (1) Bull's comment about Jehovah's Witnesses; (2) Rodriguez comment to Bull to "suck [his] dick"; and (3) Bull's comment to someone else that the Plaintiff wore "control-top underwear" – fall far short of identifying harassment sufficiently pervasive to have transformed the Plaintiff's working conditions for the worse. See Mormol v. Costco Wholesale Corp., 364 F .3d 54, 59 (2d Cir. 2004) (affirming summary judgment where within a period of about a month, supervisor claimed he would not approve the plaintiff's vacation request if she did not sleep with him, offered various job benefits if she slept with him, and threatened to reassign her to another department when she refused his offer); Alfano, 294 F.3d at 378 (reversing jury verdict where only cognizable allegations involved three comments or pranks involving carrots and intimating the plaintiff's sexual practices and a vulgar cartoon depicting a subordinate with whom the plaintiff had allegedly had inappropriate physical contact); Quinn, 159 F.3d at 768-69 (affirming summary judgment where supervisor told the plaintiff she had been voted the "sleekest ass" in the office and supervisor "deliberately touched plaintiff's breasts with some papers he was holding in his hand"). "Although the alleged statement ["about the control-top underwear"] may have been crude and [] insensitive, [it was] not sufficiently 'severe' or 'pervasive' to alter the conditions of plaintiff's working environment." Curcio v. Roosevelt Union Free School Dist., No. 10–CV–5612 (SJF)(AKT), 2012 WL 3646935, at *11 (E.D.N.Y. Aug. 22, 2012).

The Court further notes that Bull's comment about Jehovah's Witnesses does not support the Plaintiff's hostile work environment claim because it was not gender-based. See Fattoruso v.

Hilton Grand Vacations Co., 873 F. Supp. 2d 569, 578-79 (S.D.N.Y. 2012) (dismissing the complaint where there was "nothing that indicates that plaintiff was treated 'unequally' based upon his gender" and because the complaint "fail[ed] to allege specific acts to support a claim that the work environment was hostile to men – 'unfairness' does not equate to hostility, no matter how inequitable"); Dottolo v. Byrne Dairy, Inc., No. 08-CV-0390 (GTS)(ATB), 2010 WL 2560551, at *5 (N.D.N.Y. June 22, 2010) (dismissing the complaint because the plaintiff had failed "to allege facts plausibly suggesting that [the defendant] posited an unwelcome question to [the plaintiff] because of his sex"); Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 516 (S.D.N.Y. 2010) (dismissing the hostile work environment claim "because none of the alleged acts of harassment committed directly against [the plaintiff] – either when viewed in isolation or in conjunction with any potential discrimination against women – support a claim that [he] is being harassed because he is a male employee")(internal quotation marks and citation omitted).

Finally, the Court finds that, even if the Plaintiff could demonstrate that she experienced timely "severe or pervasive" gender-based harassment, the Plaintiff has failed to establish a triable issue of fact as to impute liability for that alleged conduct to the Defendant-employer. "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (quoting Karibian v. Columbia Univ., 14 F.3d 773, 780 (2d Cir. 1994)).

In this case, the Plaintiff made complaints about Keen in January, April, and October of 2009. The record establishes that, each time, the Defendant responded to the complaint and took prompt remedial action.

For example, after the January 2009 complaint, the Plaintiff's supervisor instructed Keen to behave professionally.

After the April 2009 complaint, Dunbar conducted an investigation in which she interviewed seven employees. Dunbar also called a meeting between the Plaintiff, Keen, and Johnson, during which an agreement was made to resolve the issues. Dunbar followed up with the Plaintiff on May 22, 2009 and each month thereafter through September 2009 to determine if there were any problems with Keen. Each time, the Plaintiff advised Dunbar that there were no issues with Keen's behavior. The Court finds that the Plaintiff's contention that Dunbar convinced her not to contact the EEOC is without record support.

After the October 2009 complaint, the Defendant honored the Plaintiff's request to move her work station and issued a written warning to Keen. The Plaintiff concedes that she was satisfied with the Defendant's actions in this regard. There is no evidence of Keen behaving inappropriately after October 2009. In this regard, the Court finds that Keen's conduct was certainly not severe or pervasive, and cannot be the basis of a hostile work environment claim.

The Plaintiff contends that the Defendant failed to appropriately respond to her "complaints" to Dunbar about the two co-workers who "seemed upset" that she was in a new work station. However, the Court finds that this conduct was not of a harassing nature that would trigger a duty to remediate by the Defendant-Employer.

Inasmuch as the Plaintiff asserts that the Defendant failed to appropriately respond to the incident involving a knife on the Plaintiff's credenza, the Court finds that the Plaintiff is hard-pressed to maintain that such a single deficient remedial response by the Defendant-Employer could impute liability to that entity under a theory of a hostile work environment.

In any event, the Court finds that the Plaintiff's hostile work environment claims fails for the independent reason that the Plaintiff did not establish a triable issue of fact as to "severe or pervasive" harassment based on incidents within the statutory time period. Accordingly, the Court grants summary judgment to the Defendant dismissing the hostile work environment claim.

## C. The Retaliation Claim

The Plaintiff has failed to come forward with any direct evidence of retaliation. In particular, the Plaintiff makes the specious argument that a jury could determine that Dunbar was upset that the Plaintiff complained and threatened to report an incident to the EEOC during a September 28, 2009 meeting. However, the Plaintiff points to no evidence that Dunbar, was, in fact, upset.

In the absence of direct evidence of retaliation, under Title VII, "[t]o make out a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks omitted). Here, the Court finds that the Plaintiff fails to establish a genuine dispute of material fact with regard to the fourth element of her *prima facie* case of retaliation.

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001). Nonetheless, "district courts within the Second Circuit have consistently held that the passage of two to three

months between the protected activity and the adverse employment action does not allow for an inference of causation." Murray v. Visiting Nurse Servs., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); see also Cunningham v. Consol. Edison Inc., No. CV-03-3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line.")(collecting cases); Nicastro v. Runyon, 60 F. Supp. 2d. 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.")(collecting cases).  In this case, eleven months elapsed between the Plaintiff's termination and her last complaint in March 2010, when she asserted that Johnson retaliated against her by not promoting her.

To be sure, temporal proximity between engagement in protected activity and an adverse employment action is not necessary to survive summary judgment. "While temporal proximity between protected activity and an adverse action can support an inference of unlawful retaliation, [it] is but one factor that must be considered with all others." Tuccio Development, Inc. v. Town of Brookfield, No. 08-cv-1016 (MRK), 2010 WL 2794192, at *18 (D. Conn. July 14, 2010) (citing cases); see also Oliphant v. Connecticut Dept. of Transp., No. 3:02-cv-700 (PCD), 2006 WL 3020890, at *10 (D. Conn. Oct. 23, 2006) ("The operative issue is not simply the length of time between the protected activity and the alleged retaliation but the demonstrated nexus between the two.").  According to some courts, a plaintiff may also demonstrate a causal connection by showing a "pattern of antagonism" over the intervening period. Chan v. NYU Downtown Hosp., No. 03 Civ. 3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004) (citing Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997)); see also Bucalo v. Shelter Island Union Free School Dist., 691 F.3d 119, 131 (2d Cir. Aug. 10, 2012) (noting that the

retaliation claim was submitted to the jury notwithstanding a four (4)-year gap of time because the defendant took adverse action "on its first opportunity to do so").

That is not the case here. There is no evidence of a "pattern of antagonism" against the Plaintiff on the Defendant's part. Also, unlike the employers in Bucalo and Curcio, the adverse employment action taken here – namely, the Plaintiff's termination – could have happened at any time during her employment. "As [the] plaintiff provides no other facts to substantiate a finding that a causal connection exists between these events, the temporal relationship is too attenuated to allow for an inference of causation." Freeman v. Dep't of Envtl. Prot., 10 CV 1555 (NGG) (LB), 2013 WL 817221, at *12 (E.D.N.Y. Feb. 5, 2013), report and recommendation adopted, 10-CV-1555 (NGG)(LB), 2013 WL 801684 (E.D.N.Y. Mar. 5, 2013). Accordingly, the Court finds that the Plaintiff failed to establish a triable issue of fact on her *prima facie* claim for retaliation.

Even if the Plaintiff could establish a *prima facie* claim for relation, the Defendant has provided a nondiscriminatory reason for her dismissal.

 "A *bona fide* reduction in workforce is a legitimate nondiscriminatory reason for terminating an employee." Chuang v. T.W. Wang Inc., 647 F. Supp. 2d 221, 234 (E.D.N.Y. 2009); see James v. New York Racing Assoc., 76 F. Supp. 2d 250, 256 (E.D.N.Y. 1999), aff'd 233 F.3d 149 (citing Parcinski v. Outlet Co., 673 F.2d 34, 36 (2d Cir. 1982) ("The [Age Discrimination and Employment] Act does not forbid essential corporate belt-tightening having no discriminatory motivation.")).

Here, the Plaintiff does not dispute that the Defendant implemented a reduction-in-force because it missed revenue targets in 2010 and salaries were the Defendant's largest expense.

The Plaintiff also does not contend that the reduction-in-force itself was actually a pretext for retaliation. Rather, the Plaintiff contends that her inclusion in the reduction-in-force was not necessary. In this regard, the Plaintiff points to the fact that, in April 2011, two months after her termination, a vacant Project Handler II position was posted on the Defendant's website and that another individual was ultimately hired for that position. However, the Defendant posted this opening for the Wire & Cable department, not the High Tech Department in which the Plaintiff previously worked. Presumably, these positions had different supervisors. Under these circumstances, the Court finds that Plaintiff has failed to establish a triable issue of fact as to whether her inclusion in the reduction-in-force was a pretext for retaliation. Accordingly, the Court grants the Defendant's motion for summary judgment dismissing the retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's motion for summary judgment dismissing the complaint in its entirety. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
March 17, 2014

_____ *Arthur D. Spatt* _____
ARTHUR D. SPATT
United States District Judge